```
                      UNITED STATES DISTRICT COURT

                       DISTRICT OF NEW HAMPSHIRE
```

<u>United States of America</u>

    v.                                              Case No. 20-cr-139-1-SM
                                                        Opinion No. 2022 DNH 053

<u>Darvent E. Cummings</u>


**<u>O R D E R</u>**

Defendant's motion to suppress evidence of unlawful drug possession on grounds that it represents fruits of an unconstitutional search of the rental car in which he was a passenger (doc. no. 32) is denied.

**Background**

Crediting New Hampshire State Trooper Timothy Berky's testimony, defendant was a passenger in a white Ford Fusion travelling north on Interstate 95 in Hampton, New Hampshire, on September 30, 2020. Trooper Berky observed the car as it passed him. He noted that the driver was wearing a hooded shirt with the hood up. He, curiously, thought that "unusual" — and that the driver was somehow "trying to hide their identity." (The driver was Hispanic.) Trooper Berky followed the car and, when he got close enough, he ran the license plate through the State Police Online Telecommunications System ("SPOTS"). The plate

was from Maine, but the system reported that a Maine license plate with that number was "not on file" as a valid Maine motor vehicle registration.  Trooper Berky made additional attempts to search for the plate number, but each time it came back "not on file."  Trooper Berky decided to initiate a stop to investigate what he suspected might be an unregistered vehicle being operated on the highway.[1]

As the car was pulling over, Trooper Berky noticed the passenger (defendant) moving about quickly, as if handling something.  Trooper Berky approached the car, identified himself, and asked for the operator's driver's license and the car's registration.  In response, the driver, a young female, told Berky that she did not have a license, thereby establishing an obvious motor vehicle violation.  Defendant gave Trooper Berky his license, told him the car was a rental, but said a

---

[1] Trooper Berky also said he noticed an air freshener product hanging from the rearview mirror, swinging, which he thought might obstruct the driver's forward view (N.H. Rev. Stat. Ann. Ch. 269:95).  He offered that circumstance, in addition to the suspected invalid registration, as grounds for initiating a traffic stop.  I reject that ground, finding it, under these circumstances, to be likely pretextual, at best.  Every trivial potential or arguable violation of a state's traffic code does not ipso facto warrant a Terry stop intrusion, disrupting the free travel of citizens on public roads and highways.  Indeed such offered grounds, if anything, add weight to claims that what is actually happening is profiling of citizens based on mere hunches and biases related to drug interdiction efforts.

2

friend rented it for him and he did not have the rental agreement.

Trooper Berky asked the driver to exit the car and move to the rear so he could speak to her.  She identified herself as Alanna Reyes, from Bangor, Maine.  She reiterated that she had no license to drive and had never had one.  Berky noticed that the defendant seemed to be moving in the car and turning around to see where the trooper was.  He returned to the passenger window to tell him to stop moving about, at which time defendant produced the car's registration, which he had found.  The car was properly registered to the Enterprise car rental company.  The paper registration of course resolved any suspicion raised by the STOPS's report of "not on file" with respect to the plate.  But, at that point, it was clear that the car had been operated unlawfully by an unlicensed driver.

Trooper Berky returned to Ms. Reyes and asked where they were travelling from.  She said they were coming from Bangor.  But they were travelling northbound toward Bangor.  Berky suggested that she meant they were going to Bangor, to which Reyes agreed.  She then said they were coming from "a store," but she could not recall the name, which seemed suspicious to Berky, given that it was three hours to Bangor — a long trip for

3

a casual visit to a store that she could not recall. Reyes volunteered that she and the defendant had actually been visiting a friend of the defendant's. Trooper Berky asked Reyes if there was anything illegal in the car and she said no. Berky asked specifically if there were drugs in the car. Reyes began to cry, claiming she did not know anything and was just driving.

Trooper Jeffrey Costa arrived to assist. Trooper Berky returned to speak with the defendant while Costa stayed with Reyes. Reyes asked Trooper Costa if she could be honest, and then told him that she thought there were drugs in the car. Reyes related that the defendant's girlfriend, Tia, asked her to drive the defendant to New York City, and she knew Tia and the defendant to be drug dealers in the Bangor area. She said she saw the defendant put a black bag in the car when they left Bangor, and, when they arrived in New York City he brought the bag from the car into a residence they visited. She saw defendant bring the black bag back to the car before they left to return to Bangor. Reyes said she was not sure precisely where the bag was located, but believed it to be in the car. Trooper Costa summoned Berky, and Reyes told him that she knew there were drugs in a black bag in the car but did not know where it was, or what type or amount of drugs were in the bag.

Trooper Berky asked Reyes for a consent to search the car, which Reyes gave.  Berky then asked the defendant if he had any belongings in the car.  He responded "no."  Defendant was asked to step out of the car, which he did, and the car was searched.  Inside the locked glove compartment Berky found a black bag containing fentanyl.

## Discussion

Defendant presents a number of arguments supporting his contention that the inculpatory evidence seized from the car was the product of an unconstitutional search, and, accordingly, ought to be excluded at trial.  He challenges the validity of Reyes's consent to search, saying that it should have been obvious that he, not she, was "in possession" of the rental car.  But that issue, as the government notes, need not be resolved, given that, before the search, Reyes's statements and the totality of the circumstances, plainly provided the officers with probable cause to believe that illegal drugs were likely in the car in a black bag.  Reyes's travel information was contradictory, she exhibited excessive nervousness and had an emotional reaction when asked about illegal items in the car.  She volunteered that she knew defendant and Tia, his girlfriend, to be drug dealers in the Bangor area, that Tia asked her to drive the defendant to New York City and back, that the

5

defendant took a black bag with him, and then into a residence in New York City, and then back to the car for the return trip to Maine.  The indicia of a drug procurement trip by a drug dealer were present, as related by a participant.  Defendant's suggestion that Reyes had credibility problems, having lied about their travels, is a valid point to raise, but the troopers were also entitled to weigh and assess the credibility of her story as a whole.  That story of a drug dealer travelling to New York City to obtain drugs was reasonably assessed by Trooper Berky as sufficiently credible for him to conclude that illegal drugs were more likely than not to be found in a black bag in the rental car Reyes was driving.  That is, the troopers had probable cause to search the car.

Defendant next argues that the initial motor vehicle stop was unconstitutional in that Trooper Berky relied upon a faulty and unreliable database to justify his "reasonable and articulable" suspicion that the car was unregistered.

But Trooper Berky was not aware, when he initiated the stop, that some Maine vehicle registrations are apparently not promptly entered into the state's electronic database.  While it is not clear what percentage of new car registrations are delayed by several weeks, it still seems that the vast majority

6

of registrations are not delayed, since what delay occurs is a function of some smaller towns' or cities' use of paper documents which are then sent to the state's division of motor vehicles for electronic data entry, while most do that locally.[2] Even given that circumstance, a "not on file" return to a Trooper's inquiry provides at least a substantial suspicion that the car is not properly registered — that would be true in most, though not all, cases, and certainly would support a brief Terry stop to inquire and allay or confirm that suspicion.  Production of a valid registration would quickly and conclusively resolve the matter with minimal intrusion — as it did here.  The electronic search system, and database, need not be perfect or infallible.  It is sufficient if it is reasonably reliable; this is not a case in which arrests are being made based on the database, but, rather, mere inquiry to allay a reasonable and articulable suspicion.

---

[2] As the government notes, it has supplemented its hearing evidence with proffers of testimony it expects Maine administrators would give regarding the workings of the state's registration system and the associated electronic database.  The court is relying on those proffers here, but if defendant challenges those proffers or believes other facts are relevant, the suppression issue will be revisited at trial out of the presence of the jury.

In this case, however, the valid registration was not produced when first requested, and when it was produced later, the Trooper was already aware that the car was being driven unlawfully by an unlicensed driver.  And, the driver had provided suspicious answers to routine questions, and, was exhibiting suspicious behavior, and, had disclosed facts that gave rise to probable cause to believe that she and the defendant were returning from a drug procurement trip to New York City, with illegal drugs in a black bag in the car.

Accordingly, the initial traffic stop was valid under Terry v. Ohio, 392 U.S. 1 (1968).  And, the unfolding events during the stop permitted Trooper Berky to "shift his focus and increase the scope of his investigation by degrees" as he was confronted by the admission that the driver had no license, and that she knew defendant to be a drug dealer, and that she and he were involved at that moment in completing a drug run to New York City.  United States v. Chhien, 266 F. 3d 1, 6 (1st Cir. 2002).  Ms. Reyes was unusually nervous and emotional and her odd responses to routine inquiries warranted additional brief inquiry.  Her admission to Trooper Costa, repeated to Trooper Berky, provided a reasonable, and inculpatory, explanation for that nervousness, and her untruthful statements about their travel routes and purposes.  An objective and reasonable police

8

officer in Trooper Berky's position would have understood the totality of circumstances to support the conclusion that illegal drugs were likely to be found in a black bag in the rental car.

### Conclusion

Because the initial traffic stop was supported by reasonable, articulable suspicion that the rental car was not validly registered, and because the evolving circumstances after the stop gave rise to probable cause to believe illegal drugs were being transported in the car, and would likely be found in the car, the evidence discovered and seized was not the product of an unlawful search. The motion to exclude that evidence is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

April 12, 2022

cc:  Seth R. Aframe, AUSA
     John J. Kennedy, AUSA
     Eric Wolpin, Esq.
     U.S. Probation
     U.S. Marshal